UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

---

*In re*:

WILLIAM R. McNALL and
JACQUELINE F. McNALL,    Case No. 25-10375-7

Debtors.

---

### DECISION ON MOTION BY NORTH AMERICAN BANKING COMPANY TO EXTEND TIME TO OBJECT TO DISCHARGE

William and Jacqueline McNall filed a voluntary Chapter 7 petition in February 2025. The Section 341 meeting of creditors was March 24. Batavia Leasing Company ("Batavia") and North American Banking Company ("NABC") were listed as creditors (Dkt. No. 1). The Notice of Chapter 7 Bankruptcy Case set May 23, 2025, as the deadline to object to discharge or dischargeability (Dkt. No. 4). Batavia and North American Banking Company received this Notice (Dkt. No. 8).

Batavia filed a motion for relief from stay on April 22, and notice of the motion was sent to one of the attorneys for NABC (Dkt. Nos. 43 and 44). NABC filed its own motion for relief from stay on May 7, 2025 (Dkt. No. 56).

No objections to the Batavia motion were filed, and relief from stay was granted on May 21 (Dkt. No. 69). NABC was granted relief from the automatic stay to repossess a John Deere 12 row crop header ("Collateral") on May 22 (Dkt. No. 70).

The deadline to object to Debtors' discharge was May 23. Agrifund, LLC, filed a motion to extend time for it to pursue a determination of dischargeability. It was the only creditor to timely do so.

NABC filed the present motion seeking to extend the deadline to object to discharge on July 29. Debtors objected on August 12. The Court held a hearing and took the matter under advisement.

## FACTS

In November 2024, NABC financed Debtor's purchase of the Collateral from Lodestar Equipment, with serial number 1XF612FCAHC785575. Mr. McNall executed an equipment finance agreement and NABC perfected its security interest by filing a UCC-1 financing statement. Debtors were required to make 48 payments of $2,957 (plus applicable taxes) under the agreement. NABC wired $109,500 to Lodestar to finance the purchase of the Collateral, which included $2,500 for freight.

Notice of the Debtors' bankruptcy petition was sent to NABC on February 26, 2025 (Dkt. No. 8). The notice included the deadlines to object to discharge or seek a determination of nondischargeability. Debtors' summary of assets and liabilities, schedules, and statement of financial affairs listed NABC as a general unsecured creditor with a claim of $109,750. The schedules included the following description for the Collateral:[1]

---

[1] Dkt. No. 20, p. 50 of 91.

2

> 48-month LEASE: Equipment Finance Agreement on 2017 JD 12 row Crop Header JD612FC; secured by Guaranty and filed UCC#20241118000503-1
>
> ■ Other. Specify   GOES (involved with Batavia)

Debtors also listed NABC on Schedule G as holding an executory contract that Debtors planned to reject.[2]

NABC moved for relief from the automatic stay to repossess the Collateral two weeks *after* Batavia filed its motion for relief from stay. The Batavia motion sought relief for three pieces of equipment:

- One John Deere 612FCC Cornhead w/ Valve Kit s/n-1XF612FCLHC785576

- One John Deere 612FCC Cornhead w/ Valve Kit s/n-1XF672BCAHC785575

- One John Deere 2720 Disk Ripper s/n-1JL2720XCN0795109

The Court granted the Batavia motion on May 21.

Batavia was granted relief from the automatic stay one day prior to the relief granted to NABC.[3] NABC says that it reached out to Debtors' counsel multiple times on May 23 to coordinate Debtors' surrender of the Collateral but received no response until June 16. It asserts it then discovered that the Collateral had been surrendered to another creditor, Batavia Leasing Company.

---

[2] *Id.*, p. 58 of 91.

[3] *See* Dkt. No. 69.

NABC says it requested additional information from Debtors' counsel over the following days, but it received no response. NABC filed a proof of claim on June 23 in the secured amount of $106,654.27.

NABC claims that on June 25, 2025, it discovered Batavia asserted an ownership interest in the Collateral and that it had allegedly been leasing the same to the Debtors. In early July, NABC claims that it discovered Lodestar paid $103,000 directly to the Debtors. It thinks the Debtors in fact either owned or leased the Collateral at the time that NABC wired the funds to Lodestar. NABC argues it was never aware that Debtors possessed the Collateral before entering into the financing agreement.

NABC requested that Batavia hold the Collateral, which Batavia has refused to do.

NABC filed its motion seeking to extend time to object to discharge:

- 156 days after the petition date;
- 98 days after Batavia filed its motion for relief from stay;
- 83 days after filing its own motion for relief from stay;
- 67 days after Agrifund, LLC, asked for an extension of time to object to discharge; and
- 67 days after expiration of the deadline to object to discharge or dischargeability.

Debtors objected to the motion to extend. They explain that their business relationship with NABC was brokered by a farm consultant. They say that at all relevant times, the Debtors understood their relationship with NABC to be a refinance of existing equipment, not a purchase of new equipment. The

4

broker facilitated all their agreements with NABC. The Debtors say they didn't negotiate directly with NABC, nor did they receive any funds directly from NABC or Lodestar. Rather, the Debtors relied on their broker to negotiate the agreement, including paying off a prior lien in favor of Batavia. NABC replied, arguing that it is entitled to equitable remedies like tolling and estoppel to extend the deadline.

The Court held a hearing on the motion and took it under advisement.

## DISCUSSION

1. <u>Legal Standards</u>

Bankruptcy Rule 4004(a) states that a complaint objecting to a debtor's discharge must be filed within 60 days after the first date set for the meeting of creditors. Rule 4004(b)(2) further provides for an extension of the time for objecting to a debtor's discharge for cause after the expiration of the objection deadline if:

(A) the objection is based on facts that, if learned after the discharge is granted, would provide a basis for revocation under section 727(d);

(B) the movant did not know those facts in time to object; and

(C) the movant files the motion promptly after learning about them.

Rule 4007(c) further provides that a complaint to determine the dischargeability of a debt under Code section 523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors. The deadline may be extended for cause so long as the motion to extend the deadline is filed *before* the time for such objections expires.

5

2. <u>Motion to Extend Time to Object to Discharge</u>

NABC argues that it acted diligently in seeking to recover its collateral. It asserts that Debtors' counsel refused to answer phone calls or emails at critical periods when NABC was attempting to collect the Collateral pursuant to the order granting it relief from stay. NABC also says it relied on representations by Debtors' counsel at the Section 341 meeting of creditors that the Debtors had made mistakes in their schedules and would be submitting amendments. For these reasons, NABC submits that it is entitled to equitable tolling of the deadline to object to discharge.

A party is entitled to equitable tolling "'only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Socha v. Boughton*, 763 F.3d 674, 683 (7th Cir. 2014) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)). Equitable tolling is "rare" (*Socha*, 763 F.3d at 684), particularly "when a claimant can obtain an extension of time for complying with a deadline." *Yuan Gao v. Mukasey*, 519 F.3d 376, 377 (7th Cir. 2008). A litigant invoking the doctrine must show that timely filing was "far beyond [his] control." *Socha*, 763 F.3d at 684 (internal quotation omitted).

Equitable tolling requires a court to consider "whether a reasonable person in the plaintiff's position would have been aware of the *possibility* that [a claim existed]." *Beamon v. Marshall & Ilsley Tr. Co.*, 411 F.3d 854, 860–61 (7th Cir. 2005) (emphasis in original). This Court has explained that

> [a] creditor who simply does not act quickly enough to learn the facts is not entitled to a belated extension of the deadline, because such an exception would quickly consume the rule. The crucial concept here is whether the plaintiff is (or should be, as the test is that of a reasonable person) aware of the possibility or *potential* of a claim.

*Opportunity Bank, N.A. v. Martinsen (In re Martinsen)*, 449 B.R. 917, 923 (Bankr. W.D. Wis. 2011).

NABC is not entitled to an extension of the deadline. NABC knew about the bankruptcy case. It knew about the deadline for complaints objecting to discharge or to determine dischargeability. It was aware of the motion for relief from stay filed by Batavia. It received notice of the order for relief from stay granted to Batavia.

It knew about the need to seek an extension of the deadline for objections to dischargeability. Notice of the Agrifund, LLC, motion for an extension went to NABC. That extension is noted in NABC's brief. And NABC had notice of and knew about the May 23 deadline.

Nothing prevented NABC from filing a motion for an extension before the May 23 deadline passed. That the parties were busy discussing NABC's motion for relief from stay is beside the point. The discussions in no way stopped NABC from moving to extend the deadline when it didn't receive any response to its inquiry. Whatever discussions the parties were having, it was incumbent on NABC to preserve its rights while it had them. NABC has not only shown no "extraordinary circumstance," *Socha*, 763 F.3d at 684, it has shown no circumstance at all.

NABC relies heavily on the Seventh Circuit's decision in *In re Kontrick* for support. 295 F.3d 724 (7th Cir. 2002). That decision held the doctrines of waiver, estoppel and equitable tolling apply to the deadline provided under Rule 4004(a).

But the *Kontrick* court only held that those equitable doctrines apply in the context of determining that the time limits of Rule 4004 were non-jurisdictional. It concluded that a debtor waived his defense that an amended complaint was untimely by not raising timeliness in his answer. *Id.* at 735 ("[T]he timeliness issue was not presented to the bankruptcy court until after it had ruled on the question of whether a discharge ought to be refused. The policy concerns of expeditious administration of bankruptcy matters and the finality of the bankruptcy court's decision hardly are fostered by requiring the bankruptcy court to consider the timeliness of an issue that it already has adjudicated.").

If NABC was aware of the deadline to object to discharge (which it was), and it was unclear about the status of its Collateral, and that Batavia had relief from stay to obtain possession of two cornheads, then it should have known a potential claim existed. *Martinsen*, 449 B.R. at 923. This is particularly on point if the concern was that the Debtors were not responding to inquiries. And the schedules also clearly suggested that the same equipment was claimed by Batavia and NABC.

Indeed, even without the benefit of hindsight, NABC should have noticed the markers of a potential claim. First, Debtors' schedules (filed March 18, two

months before the deadline to object to discharge) listed NABC as a general unsecured creditor. Second, the schedules listed NABC's agreement as a lease that Debtors would be rejecting. While Debtors noted at the meeting of creditors that they'd file amended schedules to correct this apparent mistake, no amendments were filed, and NABC failed to take action. Third, the schedules noted that the Collateral was "involved with Batavia." And while NABC writes this off as merely nonsensical, or a scrivener's error, the alarm bells should have rung when Batavia then filed a motion for relief from stay on April 22 against property identical to NABC's alleged Collateral. But NABC thought it was coincidence and found comfort that the respective serial numbers were different: 1X612FCAHC785575[4] and 1XF612FCLHC785576.[5] Further inspection of the documents and exhibits by NABC may have revealed the culprit, which appears to be a misprint:

```
New John Deere 612FCC Cornhead w/valve kit
s/n-1X6672BCAHC785575
New John Deere 612FCC Cornhead w/ valve kit
s/n-1XF612FCLHC785576
```

Batavia's motion for relief, Dkt. No. 43, p. 8 of 17.

---

[4] NABC's motion for relief from stay, Dkt. No. 56.

[5] Batavia's motion for relief from stay, Dkt. No. 43.

| DESCRIPTION OF EQUIPMENT LEASED |
|---|
| New John Deere 612FCC Cornhead w/ Valve Kit |
| S/N-1X0672BCAXC765575 |
| New John Deere 612FCC Cornhead w/ Valve Kit |
| S/N-1XF612FCLXC765575 |

*Id.*, p. 11 of 17.

  Still, even after it was granted relief from stay and with the knowledge that the clock was ticking on objecting to discharge, NABC waited until more than two months after the deadline passed. Contrast this with the efforts of Agrifund, LLC, which found itself in a similar circumstance. It was granted relief from stay on March 26. It sent a proposed agreement to Debtors in mid-April. But after sending "more than ten (10) e-mails to counsel for the Debtors,"[6] and not receiving anything in return, it timely moved to extend the deadline to object to discharge on May 23.

  What's more, NABC didn't file its motion for relief from stay (which NABC claims ultimately led to the discovery of the alleged fraud) until two-and-a-half months beyond the petition date. The motion for relief simply says that Debtors failed to make payments under the finance agreement. NABC may have been prudent to move for relief earlier, like Agrifund, but it chose not to do so.

  Moreover, NABC fails to explain why, after not hearing from the Debtors on May 23, it took no action until Debtors finally responded to its inquiries on June 16. It was then that NABC discovered that the Collateral had been surrendered to Batavia. If that was the trigger for consideration of an action

---

[6] Dkt. No. 71, p. 5 of 13.

related to discharge, then NABC could at least have quickly filed a motion seeking an extension and pleading excusable neglect.

*NABC didn't file the present motion until the end of July.* Instead, when faced with all the facts, and more, that could put NABC on notice of at least a potential claim, it continued to seek information from Debtors' unresponsive counsel. NABC then filed a secured claim on June 23. Still, no explanation is given for why NABC took no action in this Court until July 29—over a month after it discovered the alleged fraud and more than two months after the deadline to object to discharge.

NABC has failed to show that it pursued its rights diligently or that some extraordinary circumstance stood in its way and prevented timely filing. *Socha*, 763 F.3d at 683. NABC wasn't prompt in moving for an extension of the deadline, having waited until the end of July to file its motion when it discovered the alleged fraud more than a month before. *See* Fed. R. Bankr. P. 4004(b)(2)(C). NABC is not entitled to relief because it simply didn't act quickly enough to learn the facts when it had the means to. *Martinsen*, 449 B.R. at 923.

## CONCLUSION

NABC's motion is DENIED.

This decision constitutes findings of fact and conclusions of law under Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

11

A separate order consistent with this decision will be entered.

Dated: October 22, 2025

> BY THE COURT:
>
> _____
> Hon. Catherine J. Furay
> U.S. Bankruptcy Judge